UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
THE UNIVERSAL CHURCH, INC.,

              Plaintiff,

    - against -                      **MEMORANDUM & ORDER**

UNIVERSAL LIFE CHURCH/ULC MONASTERY     14 Civ. 5213 (NRB)
d/b/a THE UNIVERSAL LIFE CHURCH,
UNIVERSAL LIFE CHURCH MONASTERY
STOREHOUSE, GEORGE FREEMAN, BRUCE TAYLOR,
CALVIN TOELLNER and DANIEL CHAPIN,

              Defendants.
------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Universal Life Church/ULC Monastery d/b/a The Universal Life Church, Universal Life Church Monastery Storehouse, George Freeman, Bruce Taylor, Calvin Toellner, and Daniel Chapin (collectively, "defendants") move for attorneys' fees against The Universal Church, Inc. ("plaintiff"). The Court denies defendants' motion for the reasons stated below.

**Background**

The Court detailed the facts of this case in its Memorandum and Order granting defendants' and denying plaintiff's motions for summary judgment. See Universal Church, Inc. v. Universal Life Church/ULC Monastery, No. 14-CV-5213 (NRB), 2017 WL 3669625 (S.D.N.Y. Aug. 8, 2017) ("Universal Church"). The Court assumes

1

familiarity with that decision, and states here only those facts necessary to resolve this motion.

Plaintiff is a Pentecostal church with approximately 30,000 members. Universal Church, 2017 WL at *1. In 2006, it registered "Universal Church" as a trademark with the United States Patent and Trademark Office (the "USPTO") for use in "evangelistic and ministerial services, namely, conducting religious worship services." Id. at *2. In 2012, it registered "The Universal Church" as a trademark with the USPTO for use in, among other things, "religious counseling and ministerial services." Id.

Defendants are two affiliated not-for-profit corporations and their current or former officers. Id. at *1-2. The corporate defendants are nondenominational offshoots of a California church, and their principal business is offering free ordinations to their members. Id. at *1. In 2009, defendants attempted to register "Universal Life Church" and similar phrases as trademarks, but the USPTO rejected their applications because there was a likelihood of confusion with other registered trademarks, including "Universal Church." Id. at *2.

Notwithstanding plaintiff's registrations of "Universal Church" and "The Universal Church," defendants used the marks in four undisputed ways. First, between 2009 and 2013, they registered seventeen website domain names that contained the phrase "universal church," including universalchurch.org. Id. at

*2-3.  Second, they used the phrase "universal church" on universalchurch.org.  Id. at *3.  Third, they used "The Universal Church" as the title tag in the HTML metadata for universalchurch.org so that search engine results would describe universalchurch.org as "The Universal Church."  See id. (displaying an example).  Fourth, defendants bid to place advertisements above search results for the phrase "the universal church."  Id.

In 2014, plaintiff filed a complaint against defendants that asserted claims under the Lanham Act, the Anticybersquatting Consumer Protection Act, New York's common law of unfair competition, and the New York General Business Law ("NYGBL").  See ECF No. 15.  Each of plaintiff's claims was based on defendants' various uses of its registered marks.  See id.  Defendants answered plaintiff's complaint in 2015, and sought, among other things, a declaratory judgment that plaintiff's marks were generic names for religious services, and thus not valid trademarks.  See ECF No. 24.

After the close of discovery, both parties moved for summary judgment.  The party enforcing a trademark bears the burden of establishing that its trademark is valid.  See Universal Church, 2017 WL at *6.  However, under the Lanham Act, "[a] certificate of registration of a mark . . . shall be prima facie evidence of the validity of the registered mark . . . and the owner's exclusive

3

right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate . . . ." 15 U.S.C. § 1057(b). Accordingly, if a mark is registered with the USPTO, then it is presumed to be a valid trademark when it is enforced against a use for which it was registered. See Universal Church, 2017 WL at *6 (citing Reese Pub. Co., Inc. v. Hampton Intern. Commc'ns, Inc., 620 F.2d 7, 11 (2d Cir. 1980)); see also Aluminum Fabricating Co. of Pittsburgh v. Season-All Window Corp., 259 F.2d 314, 317 (2d Cir. 1958) ("After the Lanham Act . . . the fact that the Patent Office has allowed registration creates a 'strong presumption in favor of the validity of the mark.'"). Consequently, because defendants' ordaining of ministers was a "ministerial service" – a use for which plaintiff had registered its marks – plaintiff's marks were presumed valid. See id.

Despite this presumption, the Court found that plaintiff's marks were generic, and thus invalid, as a matter of law. To determine whether the marks were generic, the Court assessed, as the Lanham Act instructs, their "'primary significance' to the 'relevant public.'" Id. at *6 (quoting 15 U.S.C. § 1064(3)). Through the submission of numerous forms of evidence, including dictionary definitions and a religious expert's report and testimony, defendants demonstrated that the relevant public understood plaintiff's marks as a type of church – namely, one that represents all of Christianity. See id. at *7-9. Plaintiff,

4

by contrast, submitted "virtually no evidence . . . that anyone in the relevant public, outside plaintiff's own members, underst[ood] 'Universal Church' as referring to plaintiff." See id. at *8-9 (reviewing and evaluating plaintiff's evidence). The Court therefore concluded that there was no genuine dispute that the primary significance of plaintiff's marks to the relevant public was not plaintiff, but instead a church that represented the entire Christian Church. Id. at *9.

The Court also found as a matter of law that there was no likelihood of confusion. See id. at *15. Weighing the factors from Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961), the Court concluded that although two factors supported that consumers could mistake plaintiff as the source of defendants' services, the remaining factors, including evidence of actual confusion, did not. See id. at *11-15.

The Court accordingly granted summary judgment against plaintiff's claims under the Lanham Act, the Anticybersquatting Consumer Protection Act, and New York's common law of unfair competition, each of which failed if the marks were generic. See id. at *10, *15-16. That left only plaintiff's claim under the NYGBL, which the Court dismissed as not cognizable under the statute. See id. at *16-17. Plaintiff appealed the Court's decision to the Second Circuit, which agreed that plaintiff had failed to create a genuine factual dispute that its marks were not

5

generic and thus affirmed. See Universal Church, Inc. v. Toellner, 752 Fed. App'x 67 (2d Cir. 2018). The Supreme Court denied plaintiff's petition for a writ of certiorari. See 2d Cir. No. 17-2960, Dkt. No. 109.

With the case resolved, defendants moved for attorneys' fees under the Lanham Act. See ECF No. 176. They also sought attorneys' fees on the ground that plaintiff had acted in bad faith. See id.

## Legal Principles

Generally, "[t]he United States follows the 'American Rule' regarding attorney's fees: '[T]he prevailing party may not recover attorney's fees as costs or otherwise.'" Castillo Grand, LLC v. Sheraton Operating Corp., 719 F.3d 120, 123 (2d Cir. 2013) (quoting Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 245 (1975)). Two exceptions to the American Rule are relevant here.

First, the American Rule "can, of course, be overcome by statute." Travelers Cas. and Sur. Co. of Am. v. Pacific Gas and Elec. Co., 549 U.S. 443, 448 (2007). Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). An "'exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.'" Sleepy's LLC v. Select Comfort Wholesale Corp., 909 F.3d 519, 530 (2d Cir.

6

2018) (quoting Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 (2014)).

When evaluating whether a case is "exceptional," district courts have "wide latitude" to "engage in a 'case-by-case exercise of their discretion, considering the totality of the circumstances.'" 4 Pillar Dynasty LLC v. New York & Co., Inc., 933 F.3d 202, 215 (2d Cir. 2019) (quoting Octane Fitness, 572 U.S. at 554). However, that "'equitable discretion should be exercised in light of the considerations [the Supreme Court] ha[s] identified.'" Manhattan Review LLC v. Yun, 765 Fed. App'x 574, 577 (2d Cir. 2019) (quoting Octane Fitness, 572 U.S. at 554). Those considerations are "'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" 4 Pillar Dynasty LLC, 933 F.3d at 215 (quoting Octane Fitness, 572 U.S. at 554 n.6 (citing Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994))); see also Louis Vuitton Malletier, S.A. v. My Other Bag, Inc., 764 Fed. App'x 39 (2d Cir. 2019) (affirming that case was not exceptional where "[t]he court's opinion enumerated the Fogerty factors and applied each in turn.").

Second, "[o]ne of the recognized common law exceptions to the American [R]ule against fee shifting is that attorneys' fees may be awarded where the party has 'acted in bad faith, vexatiously,

7

wantonly, or for oppressive reasons.'" Kerin v. U.S. Postal Serv., 218 F.3d 185, 190 (2d Cir. 2000) (quoting Alyeska, 421 U.S. at 258-59). A claim is brought in bad faith if it is "(1) meritless; and (2) brought for improper purposes such as harassment or delay." Id. (internal footnote omitted). "The award of fees pursuant to this exception is an exercise of a federal court's inherent equitable powers." Sierra Club v. U.S. Army Corps of Eng'rs, 776 F.2d 383, 390 (2d Cir. 1985). District courts have "very broad discretion to deny an application to shift fees" for bad faith. Mali v. Federal Ins. Co., 720 F.3d 387, 394 (2d Cir. 2013).

**Application**

**Defendants may not recover attorneys' fees under the Lanham Act.**

Weighing each of the four considerations set forth in Octane Fitness, defendants have failed to establish that this case was exceptional.

First, plaintiff's claims were not frivolous. "An action is 'frivolous' when either: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998) (internal quotation marks omitted). "A claim is based on an 'indisputably meritless legal theory' when either the claim lacks an arguable basis in law, or a dispositive

8

defense clearly exists on the face of the complaint."  Id. (internal citations omitted).  The allegations on which plaintiff based its claims, however, concerned defendants' actual uses of its registered marks.  Moreover, although plaintiff's claims were ultimately unsuccessful, the legal theories on which they were rooted had clear bases in law.  In this regard, defendants' failure to move to dismiss any of plaintiff's claims at the outset of this litigation is telling.

Second, defendants have failed to demonstrate that plaintiff brought this case for an improper reason.  The "paradigmatic case" of improper motive justifying an "exceptional" case finding is where "a plaintiff with no intention of testing the substance of its theories brings meritless claims to 'extract a nuisance value settlement' based on the fact that defendants will be required to expend tens or hundreds of thousands of dollars in discovery." Joao Control & Monitoring Systems, LLC v. Digital Playground, Inc., No. 12-CV-6781 (RJS), 2018 WL 1596068, at *6 (S.D.N.Y. March 28, 2018) (collecting cases).  Defendants have not shown, however, that plaintiff sued them merely to extract a settlement.  Moreover, plaintiff tested its claims, presumably at considerable cost, and lost.  See id. (declining to find case exceptional where the plaintiff unsuccessfully "pressed the merits" of its case "over a period of years, presumably at substantial expense to itself"). Defendants have also failed to show that plaintiff sued it in bad

9

faith, or, more generally, that plaintiff brought its claims for any reason other than enforcing the rights the law presumed its registered marks possessed. See infra (rejecting defendants' arguments that plaintiff litigated this case in bad faith); see also, e.g., Benihana of Tokyo, LLC v. Benihana, Inc., No. 14-CV-224 (PAE), 2018 WL 3574864, at *9-10 (S.D.N.Y. July 25, 2018), aff'd, 771 Fed. App'x 71 (2d Cir. 2019) (deeming a case "exceptional" where the plaintiff's "ulterior motive" was "to force [the defendant] to expend large counsel fees . . . so that [it] might . . . have [plaintiff] purchase [its] assets").

Third, defendants have failed to show that plaintiff's claims were objectively unreasonable. Plaintiff's marks enjoyed a "'strong'" presumption of validity in a statutory scheme designed "'to encourage[] [the] enforce[ment] [of] trademark rights.'" See, e.g., Polo Fashions, Inc. v. Dick Bruhn, Inc., 793 F.2d 1132, 1134 (9th Cir. 1986) (quoting S. Rep. No. 93-1400 (1974), reprinted in 1974 U.S.C.C.A.N. 7132, 7136); see also, e.g., Simon Says Enters., Inc. v. Schaffer, No. 81-CV-5878 (MJL), 1982 WL 61870, at *3 (S.D.N.Y. 1982) (quoting the same). To deem its claims objectively unreasonable would frustrate that design as registrants would hesitate to assert rights the law presumes they have for fear that failure would expose them to a punitive attorneys' fees award. See Express Homebuyers USA, LLC v. WBH Marketing, Inc., 343 F.Supp. 3d 562, 567 (E.D. Va. 2018) (declining

10

to find case exceptional where losing defendants' registered marks were presumed valid because "[t]o find otherwise would undermine the policy of encouraging trademark owners to defend and enforce their presumptively valid trademarks."); cf. DietGoal Innovations, LLC v. Wegmans Food Markets, Inc., 126 F.Supp. 3d 680, 685 (E.D. Va. 2015) (refusing to designate case as exceptional because "[a] patent holder has the right to vigorously enforce its presumptively valid patent." (internal quotation marks omitted)). It would also frustrate another purpose of the Lanham Act – "encourag[ing] registration of trademarks and other marks" – through eroding a presumption designed to promote registration. Aluminum Fabricating Co. of Pittsburgh, 259 F.2d at 316.

To the extent this analysis relies on the USPTO's acceptances of plaintiff's applications for trademark registrations, the Court is doing little more than applying the Lanham Act. Indeed, "[i]n the Lanham Act Congress made it clear that weight should be accorded to the actions of the Patent Office." Id. at 316 (citing the Act's presumption of validity). Of course, this does not mean all claims brought to enforce presumably valid trademarks are not objectively unreasonable. But defendants have not demonstrated that plaintiff's reliance on the presumption of validity was misplaced, for example, if it had procured its registrations through fraud. See, e.g., Maternally Yours v. Your Maternity Shop, 234 F.2d 538, 542 (2d Cir. 1956).

Fourth, defendants have not established a need to deter plaintiff. As noted earlier, defendants have not shown that plaintiff brought this action to extort a settlement from defendants. See Hockeyline, Inc. v. STATS LLC, No. 13-CV-1446 (CM), 2017 WL 1743022, at *5 (S.D.N.Y. Apr. 27, 2017) ("The need for the deterrent impact of a fee award is greater when there is evidence that the plaintiff . . . has engaged in extortive litigation."). Nor have defendants identified a "broader pattern of [plaintiff's] conduct" that this Court should discourage. Benihana of Tokyo, LLC, 2018 WL at *10 (finding that deterrence supported an attorneys' fee award under the Lanham Act where the plaintiff filed multiple lawsuits in different jurisdictions solely to impose costs on the defendant). Indeed, although plaintiff sent at least twenty-four cease-and-desist letters to churches that used its marks, "the Court is sensitive to the fact that the law compels trademark owners to police their marks or risk losing their rights." Louis Vuitton Malletier, S.A. v. My Other Bag, Inc., No. 14-CV-3419 (JMF), 2018 WL 317850, at *3 (S.D.N.Y. Jan. 8, 2018), aff'd, 764 Fed. App'x 39 (2d Cir. 2019) (concluding that deterrence did not favor an attorneys' fee award where the plaintiff's enforcement of its trademarks "veered toward the unseemly, earning it a reputation in some quarters as a 'trademark bully.'"). Weighing plaintiff's cease-and-desist letters against it would "present [it] with the Hobson's Choice of

12

either defending [its] marks and risking punitive attorney's fees awards or turning a blind eye to infringement . . . and risking the loss of [its] rights." Id.

Defendants have also not demonstrated a need for compensation. To be sure, they prevailed convincingly on summary judgment. But exceptionality requires more in a system in which the American Rule deprives thoroughly successful litigants of attorneys' fees every day, and that more is wanting here. For example, defendants have not shown that plaintiff used "unreasonable litigation tactics," Cognex Corp. v. Microsan Sys., Inc., No. 13-CV-2027 (JSR), 2014 WL 2989975, at *4 (S.D.N.Y. June 30, 2014), or that it was otherwise "guilty of any litigation misconduct," that needlessly swelled their expenses, Small v. Implant Direct Mfg. LLC, No. 06-CV-683 (NRB), 2014 WL 5463621, at *5 (S.D.N.Y. Oct. 23, 2014).

Accordingly, each of the four considerations from Octane Fitness weighs against deeming this case exceptional. The Court therefore declines to do so, and, consequently, defendants may not recover attorneys' fees under the Lanham Act.

**Defendants may not recover attorneys' fees for bad faith.**

Defendants present various arguments for why they should recover attorneys' fees pursuant to the bad faith exception to the American Rule. After considering the entire record, as well as defendants' arguments that plaintiff acted in bad faith, the Court

13

concludes that neither plaintiff's claims nor conduct constituted bad faith, and therefore declines to award any attorneys' fees on that basis.[1]

### Conclusion

For the foregoing reasons, defendants' motion for attorneys' fees is denied. The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 176.

**SO ORDERED.**

Dated:  New York, New York
        September 18, 2019

*NAOMI REICE BUCHWALD*
UNITED STATES DISTRICT JUDGE

---

[1] Plaintiff raised in a footnote in its opposition brief that defendants' motion "is untimely under Fed. R. Civ. P. 54(d)(2)(B)(i) because it was not filed within fourteen days of the Second Circuit's [m]andate." ECF No. 179 at 7 n.5. This was insufficient to put the issue before the Court because "arguments raised only in footnotes need not be addressed." Nicholas v. Bratton, No. 15-CV-9592 (JPO), 2019 WL 2223407, at *5 n.4 (S.D.N.Y. May 23, 2019) (internal quotation marks and alterations omitted); see also United States v. Mendlowitz, No. 17-CR-248 (VSB), 2019 WL 1017533, at *7 n.11 (S.D.N.Y. Mar. 2, 2019) (collecting cases); Levy v. Young Adult Inst., 103 F.Supp. 3d 426, 441 (S.D.N.Y. 2015) (denying consideration of "drastically underdeveloped" argument raised in footnote). In any event, the issue is moot because the Court denies defendants' motion.